CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 24, 2024
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:24-cr-00008 |
| v. | MEMORANDUM OPINION AND ORDER |
| BRIAN LAMONT TURNER, | |
| *Defendant.* | Judge Norman K. Moon |

This matter is before the Court on Defendant Brian Lamont Turner's pro se Motion to Suppress. Dkts. 45, 92. Therein, he argues that his "Fourth and Fourteenth Amendment rights were violated" due to an unconstitutional search of his cellphone. Dkt. 45. The United States, for its part, pushes back, claiming that the phone was abandoned and that, consequently, he lacked "any interest in the cellphone." Dkt. 105. For the foregoing reasons, the Court will conclude that Turner did not abandon his phone; that the warrantless search of his phone was, therefore, improper; and that suppression is the appropriate remedy. The Court will, accordingly, grant Defendant's Motion to Suppress.

## BACKGROUND

This case stems from an altercation in South Carolina. As the relevant police report (which was admitted as Government Exhibit 1) observed, on July 7, 2023, Turner confronted an individual (hereinafter "Complainant") in Goose Creek, South Carolina. Dkt. 105 (Ex. 1) at 3 (Police Report). Allegedly, Turner forced Complainant out of a vehicle at gunpoint,[1] entered the

---

[1] It was later "determined that the [vehicle was] owned by Turner" and that another occupant of the vehicle "used to be in a relationship" with Turner. *Id.* at 3.

1

vehicle, and drove away.² *Id.* During the course of this confrontation, Turner "dropped his cell phone" and ultimately left the scene without it. *Id.*

Thereafter, Complainant recovered the cellphone and "turned it over to" the Goose Creek Police Department ("GCPD"). GCPD determined the phone to be "found property," Dkt. 105 (Ex. 2)—a broad term used to describe, among other things, lost items, Dkt. 116 at 12:4–7. "Prior to the phone being put into evidence [as required by GCPD regulations,] a call came through from Turner's cell phone, and a woman who identified herself only as Turner's sister was advised where the phone was, and how he could get it back." Dkt. 105 (Ex. 1) at 3. The woman "stated she would let Turner know."³ *Id.*

After the call, GCPD "placed [the phone] into evidence for safe keeping," Dkt. 105 (Ex. 1) at 3, and it was officially logged into the system on July 10, 2024, Dkt. 105 (Ex. 2). Pursuant to GCPD policy, an owner of "found property," like the cellphone, has sixty days from the date the item is logged to claim it. Dkt. 116 at 26:15–25. They can do so by scheduling an appointment, which is recorded in Microsoft Outlook, to retrieve the item. *Id.* at 31:11–14. If the owner does not retrieve the item within sixty days, GCPD will destroy it. *Id.* at 26:19.

Here, two GCPD officers testified that, to their knowledge, Turner never attempted to retrieve his cellphone while it was in GCPD custody. *Id.* at 16:18–22; *Id.* at 31:15–25; *Id.* at 40:6–14. The officers stated that neither received a phone call from Turner, and one of the

---

² The Goose Creek Police Department ultimately declined to prosecute the case after the alleged victim proved uncooperative. *Id.* (recommending "[n]othing further by this agency").

³ There is no evidence in the record that Turner was informed of how he could reclaim the cellphone. But in unsworn testimony made during his closing argument, Turner admitted that he did know that GCPD had the phone and how he could retrieve it. Dkt. 116 at 66:11–67:20. He also stated—again, without being sworn—that he made efforts to retrieve the phone, but this contention has no support in the record. *Id.* The Court will not give any consideration to Turner's unsworn statements—statements made after the close of the evidence during his closing argument.

officers testified that no appointment was made to retrieve the phone. *Id.* at 16:18–22; *Id.* at 31:15–25; *Id.* at 40:6–14. Notably, one officer also acknowledged that not all inquiries into found property are required to be documented. *See id.* at 38:8–39:3. And the other officer admitted that various GCPD officers field phone calls about found property. *Id.* at 25:8–17.

Regardless, Turner's cellphone did not sit in GCPD evidence the full sixty days. Rather, on August 3, 2023—27 days after Turner dropped his phone—the FBI requested that GCPD "hold [the phone] for [the] FBI." Dkt. 105 (Ex. 2) at 1–2. The phone was then released to the FBI on August 8, 2023—32 days after Turner dropped the phone. *Id.* at 2.

Shortly after, Special Agent Mary Echols searched the phone *without a warrant*.[4] And federal prosecutors subsequently utilized evidence from the search in the criminal complaint filed in this case. *See* Dkt. 3 (Ex. 1) at 5–9. Based on that complaint, the magistrate judge issued an arrest warrant for Turner, Dkt. 4, and Turner was arrested on January 4, 2024, Dkt. 24.

After his arrest, Turner filed the present Motion to Suppress the search of his cellphone, arguing that the warrantless search of his phone violated the Fourth and Fourteenth Amendments. Dkts. 45, 92. Both parties filed briefing, Dkts. 82, 105, 107, and the Court heard argument on Turner's motion. Dkt. 109.

## DISCUSSION

Here, the Court will grant Defendant's Motion to Suppress. Based on the information available to Special Agent Echols—the searching officer—at the time of the search, it was not objectively reasonable for her to believe that Turner had abandoned his phone. It follows that the

---

[4] The FBI agent who searched the phone did not testify, so it is impossible for the Court to determine what precisely she knew at the time of the search.

warrantless search of Turner's phone violated the Fourth Amendment, and in this case, exclusion is the appropriate remedy.

## I.     The warrantless search of Turner's phone violated the Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To protect this right, courts utilize the exclusionary rule, which dictates that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347–48 (1974).

Relevant here, "[w]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, … reasonableness generally requires the obtaining of a judicial warrant." *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). Put differently, warrantless searches are generally considered "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted).

One such exception is abandonment. *See United States v. Leshuk*, 65 F.3d 1105, 1111 (4th Cir. 1995) ("[A] person who voluntarily abandons property loses any reasonable expectation of privacy in the property and is consequently precluded from seeking to suppress evidence seized from the property."). But "[a]bandonment should not be casually inferred. People lose or misplace their cell phones"—like the one at issue here—"all the time. [T]he simple loss of a cell phone does not entail the loss of a reasonable expectation of privacy." *United States v. Small*, 944 F.3d 490, 502 (4th Cir. 2019). Instead, in assessing whether a defendant abandoned property, "a reviewing court must perform 'an objective analysis' and decide whether the defendant intended to abandon the item, and also decide whether his intention can be inferred from 'words

4

spoken, acts done, and other objective facts.'" *United States v. Frazer*, 98 F.4th 102, 114 (4th Cir. 2024) (quoting *Small*, 944 F.3d at 502)). Significantly, "there are temporal limitations on evidence used in [the Court's] analysis: [the Court will] evaluate whether the defendant intended to abandon an item *using only objective information available to officers at the time they performed the warrantless search*." *Small*, 944 F.3d at 502 (emphasis added) (citations omitted). In short, the inquiry boils down to the question: was it "objectively reasonable for the [Agent Echols] to conclude that [Turner] had relinquished any reasonable expectation of privacy he had" in the cellphone? *Frazer*, 98 F.4th at 114–15.

Here, the Court concludes that Turner did not abandon his phone and that the warrantless search of the device, consequently, violated the Fourth Amendment. Most relevant to the Court's decision is the objective information—or lack thereof—that was available to Agent Echols at the time of the warrantless search. The following information was clearly available to her: (1) the GCPD police report and (2) the fact that nobody had picked up the phone for 32 days.[5] This

---

[5] To be sure, other information has been submitted to the Court by the Government on the suppression issue. But the record does not show that evidence, other than what is listed above, was available to Agent Echols at the time of the search—a fact the Government acknowledges. *See* Dkt. 116 at 63:4–12. In considering whether it was objectively reasonable for Agent Echols to believe that the phone was abandoned, the Court will consider only the evidence that was available to her, while excluding other evidence. For instance, the Court will not consider Turner's subsequent statement that the phone at issue "wasn't [my] phone." Dkt. 105 (Ex. 3) at 12:20–36. That statement was made six months after the search, and so it certainly could not have constituted information available to Echols at the time of the search.

Likewise, the Court will not consider the GCPD officers' testimony that there is no record of anybody inquiring about the phone. The Government put forward no evidence to show that Agent Echols knew this information or that it was otherwise available to her. She did not testify, and there are no facts in the record to indicate that she talked to any of the officers at GCPD. It appears more likely that Echols operated through an intermediary—Special Agent Brian Clarity—to obtain information from GCPD, and Agent Clairty testified solely that he sent Special Agent Echols the police report and the phone. Dkt. 116 at 51:21–55:1. Thus, the Court will not speculate what other objective information—if any—was available to Echols at the time of the search.

information, however, provides insufficient grounds for a reasonable officer to conclude that the cellphone at issue was abandoned. It shows simply that "[d]uring th[e] dispute Turner dropped his cellphone and [Complainant] turned it over to law enforcement;" that "a woman who identified herself only as Turner's sister was advised where the phone was [and] how he could get it back;" that "[t]he [supposed] sister state[d] she would let Turner know;" and that nobody picked up the phone for 32 days, even though GCPD policy allows 60 days to retrieve found items. *See* Dkt. 105 (Ex. 1) at 3.

Taken together, this evidence—at most—paints a picture of an individual who inadvertently lost his phone during an altercation and did not immediately pick it up. True, the fact that Turner "fail[ed] to … retrieve the phone" immediately provides some evidence of abandonment. Dkt. 105 at 7. But that fact, without more, is insufficient. Indeed, "'[t]here has to be some *voluntary* aspect to the circumstances that lead to the phone being what could be called abandoned.'" *Small*, 944 F.3d at 503 (emphasis added). And here, the evidence available to Echols does not demonstrate that Turner took any voluntary action to abandon the phone.[6] Put differently, the Government has not met its burden of proving the admissibility of the cellphone by a preponderance of evidence. *See United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974). It follows that the warrantless search of Turner's phone violated the Fourth Amendment.

Notably, the two cases the Government cites—*United States v. Frazer*, 98 F.4th 102 (4th Cir. 2024) and *United States v. Small*, 944 F.3d 490 (4th Cir. 2019)—stand in stark contrast to the case at hand. For instance, in *Small*, the Fourth Circuit found it significant that the evidence "depict[ed] a fleeing suspect tossing aside personal items while attempting to evade capture."

---

[6] The relevant evidence does not show if Turner took steps to retrieve the phone. Nor does it show whether Agent Echols inquired whether anybody had contacted GCPD about the device. It is, thus, far from clear that Turner intentionally avoided picking up the phone.

6

*Small*, 944 F.3d at 502–03. The court, accordingly, concluded that abandonment could be reasonably inferred. *Id. Frazer* dealt with a similar situation. There, the Fourth Circuit determined that the defendant had abandoned a small black bag when he "ran in a headlong fashion from the two uniformed police officers" and "[s]econds before acquiescing to [law enforcement's] commands—and when it became clear that he was about to be apprehended—[he] threw his black bag." *Frazer*, 98 F.4th at 114. Thus, in *Frazer* and *Small*, the Fourth Circuit emphasized "the combination of flight and the locations of the abandoned items" in determining that "it [was] objectively reasonable for the officer to conclude that the abandonment was intentional, rather than accidental, especially when there was no evidence of an 'attempt[ ] to retrieve.'" *Frazer*, 98 F.4th at 114 (quoting *Small*, 944 F.3d at 503).

By contrast, here, there is no evidence of flight from law enforcement or jettisoning evidence during an attempt to evade police apprehension. The police report states simply that Turner "dropped his cell phone" during an altercation and drove away. Dkt. 105 (Ex. 1) at 3. He was not being chased by the police at the time, *cf. id.* at 3 (indicating that GCPD first learned of the altercation when Complainant reported it at the police station), and significantly, when law enforcement later encountered him, Turner did not flee, *id.* Furthermore, the location of the cellphone is indicative of the phone being lost, not abandoned. The police report indicates that Turner dropped his phone at the scene of the altercation, right in front of Complainant—a notably odd place to "abandon" incriminating evidence. *Id.* at 3. So, unlike *Frazer* and *Small*—where the abandoned property was found along the path of the defendants' flight—here, there is no indication that Turner was attempting to ditch incriminating evidence while fleeing law enforcement. As a result, *Frazer* and *Small* do not save the Government's warrantless search of Turner's phone.

At bottom, because Turner did not abandon his phone, the Court concludes that the warrantless search of the phone was unreasonable and, accordingly, violated the Fourth Amendment.

## II. Because the good faith exception to the exclusionary rule does not apply, the Court will grant Turner's Motion to Suppress.

Having found that Agent Echols' warrantless search of Turner's phone violated the Fourth Amendment, the Court must address whether suppression is the proper remedy. *United States v. Leon*, 468 U.S. 897, 906 (1984) ("Whether the exclusionary sanction is appropriately imposed in a particular case … is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.") (citation and internal quotation marks omitted). "The fact that a Fourth Amendment violation occurred—i.e., that a search or arrest was unreasonable—does not necessarily mean that the exclusionary rule applies." *Herring v. United States*, 555 U.S. 135, 140 (2009). Nevertheless, the burden rests on the Government to show that the good faith exception applies, and that suppression is improper. *Cf. United States v. SDI Future Health, Inc.*, 568 F.3d 684, 706 (9th Cir. 2009) (noting that "the government bears the burden of proving" that the good faith exception applies); *United States v. Gant*, 759 F.2d 484, 487 (5th Cir. 1985) (same).

In the present case, the Government has not done so, and consequently, the Court will exclude the search of Turner's cellphone. Agent Echols did not testify at the motion to suppress hearing, so the Court will look to the circumstances of the search to determine whether the good faith exception is applicable. Notably, this is not a case where law enforcement relied on a deficient warrant or a mistaken, but reasonable belief that a home was abandoned to conduct a search. *See, e.g.*, *Leon*, 468 U.S. at 900; *United States v. Harrison*, 689 F.3d 301, 310–12 (3d Cir. 2012).

Rather, in this case, not only was the warrantless search of Turner's cellphone unreasonable, but more importantly, there is little reason why Agent Echols could not have obtained a warrant ahead of searching the phone. Indeed, the Government has advanced no reason why she could not have done so. This was not a case involving exigent circumstances or where time was of the essence. Rather, this is the precise type of case where law enforcement can and should be required to obtain a warrant, particularly as cellphones "hold for many Americans 'the privacies of life.'" *Riley v. California*, 573 U.S. 373, 403 (2014) (citation omitted). The Court, therefore, concludes that the search of Turner's cellphone must be excluded. *Herring*, 555 U.S. at 144.

In sum, the Court will grant Defendant's Motion to Suppress. The search of Turner's phone and the fruits of that search will be suppressed.

## CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's pro se Motion to Suppress. Dkts. 45, 92.

The parties are hereby **DIRECTED** to contact the Clerk's office to schedule a hearing as to whether this case should be dismissed.

It is so **ORDERED**.

The Clerk of Court is directed to send this Order to Defendant and all counsel of record.

Entered this 24th day of May 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE