CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 02, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> BRIAN LAMONT TURNER, <br><br> *Defendant.* | CASE NO. 3:24-cr-00008 <br><br> **MEMORANDUM OPINION** <br><br> JUDGE NORMAN K. MOON |

The Defendant, Brian Lamont Turner, objects to the joinder of Count One with the remaining counts of the Third Superseding Indictment, [1] and, in the alternative, moves to sever Count One from the remaining Counts. Dkt. 273. For the reasons provided below, the Court finds that joinder is permissible under Fed. R. Crim. P. 8 and severance is not required under Fed. R. Crim. P. 14(a). Accordingly, his motion is denied.

## I. BACKGROUND

In a 20-count Third Superseding Indictment, the grand jury charged the Defendant with offenses arising from an alleged sex trafficking operation that facilitated prostitution across several states. Dkt. 297. A central allegation of the indictment is that the Defendant exploited vulnerable woman and compelled them to perform commercial sex acts for his own benefit. *Id.*

---

[1] The grand jury issued its Third Superseding Indictment after the parties' briefing concluded on the Defendant's motion, which addressed Count One of the Second Superseding Indictment. Because Count One is substantively the same in both indictments, the Court construes the motion as if it had addressed Count One of the Third Superseding Indictment.

at ¶¶ 3-4. His alleged methods of controlling victims include providing and controlling access to narcotics, facilitating travel and hotel reservations, and communicating with "customers." *Id*. at ¶ 4.

Count One of the indictment is at issue in the Defendant's instant motion. This count charges the Defendant with engaging in a conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c). *Id*. at ¶¶ 6-7. More specifically, the count alleges that between April 2019 and October 19, 2019, the Defendant conspired with others "to knowingly recruit, entice, harbor, transport, provide, obtain, and maintain by any means, in and affecting interstate and foreign commerce, one or more adult female victims, including Adult Victim 4 ("AV4"), knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion, and any combination of such means would be used to cause AV4 to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a)(1) and (b)(1)." *Id*. at ¶ 6.

As detailed in the parties' filings, one of the events at issue in Count One involves an alleged encounter between the Defendant, a woman nicknamed "Rain," and AV4 in Greenville, South Carolina.[2] Based on the indictment and the briefing on the instant motion and the Motion to Dismiss the Court understands the central allegations of Count One, as it relates to AV4, to be as follows[3]: AV4 encountered the Defendant and Rain at a restaurant in Greenville County, South Carolina on October 19, 2019. AV4 gave the Defendant and Rain a ride to their hotel in exchange for gas money. Once they arrived, AV4 asked to use the restroom in the Defendant and Rain's

---

[2] The real names of "Rain" and "AV4" are known to the Court. Rain is a third party to this case whom the Government has described as a "co-conspirator" in the Defendant's offenses. However, as far as the Court is aware, she has not been criminally charged in connection to this case. The parties have referred to her as "Rain" in various filings and the Court will continue to do so as well. As for AV4, the parties are barred from using the alleged victims' full names pursuant to the Second Amended Protective Order. Dkt. 175. The Court will also refer to her using her assigned number.

[3] Unless otherwise noted, the specific alleged facts are taken from pages 5 and 8-9 of the Government's response to the Defendant's separate Motion to Dismiss Count One. Dkt. 319.

hotel room. When AV4 left the restroom, the Defendant told her that she would be making money for him. The Defendant and Rain were armed with a firearm and knife, respectively. The Defendant forced AV4 to have sex with him and posted her on commercial sex websites to set up "dates." AV4 was also forced to have sex with a commercial sex customer. The Defendant told AV4 that he would take her to Virginia –where his sex trafficking operation was based – the next day. While trapped in the hotel room, AV4 texted her mother, who, in turn, contacted law enforcement. Officers responded and arrested the Defendant at the hotel.

The Defendant characterizes the alleged interactions with AV4 as an "armed kidnapping" or "armed abduction."  Dkt. 273 at 4, 8. The Government argues that while the incident "could be described as such," it "was part of [the Defendant's] much larger scheme and plan to exploit and traffic vulnerable women." Dkt. 282 at 8.

The Defendant objects to the joinder of Count One with the other counts in this case on the ground that the conduct it alleges has no logical connection with the remaining counts. Dkt. 273 at 4-8. Moreover, the Defendant contends that even if joinder is appropriate, a trial of Count One alongside the other counts will unfairly prejudice his case. *Id*. at 8-12. Thus, he alternatively moves for the Court to sever Count One from the other counts. *Id*. at 8-9. In sum, the motion presents two questions: (1) *Is joinder proper under Fed. R. Crim. P. 8?* and (2) *Even if joinder is permissible, is severance necessary pursuant to Fed. R. Crim. P. 14(a)?*[4]

## II. LEGAL STANDARDS

Under Federal Rule of Criminal Procedure 8(a), an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or

---

[4] This Memorandum Opinion does not address the merits of the Defendant's Motion to Dismiss Count One, Dkt. 293, which is resolved in a separate decision issued on this date.

misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." For the latter two prongs, the offenses must have a logical relationship, which "exists when consideration of discrete counts against the defendant paints an incomplete picture of the defendant's criminal enterprise. *United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005).

Rule 8 "permit[s] very broad joinder ... at the pleading stage." *United States v. Cannady*, 924 F.3d 94, 102 (4th Cir. 2019) (quoting *United States v. Mackins*, 315 F.3d 399, 412 (4th Cir. 2003)). Indeed, "joinder is the 'rule rather than the exception' … because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding." *United States v. Mir*, 525 F.3d 351, 357 (4th Cir. 2008) (quoting *United States v. Acker,* 52 F.3d 509, 514 (4th Cir.1995)).

However, joinder has its limits. Most significantly, it is improper when charges are dissimilar and unrelated. This is because "[j]oinder of unrelated charges 'create[s] the possibility that a defendant will be convicted based on considerations other than the facts of the charged offense.'" *United States v. Hawkins*, 776 F.3d 200, 206 (4th Cir. 2015) (quoting *Cardwell,* 433 F.3d at 385)).

Moreover, under certain circumstances, severance may be appropriate even if joinder of multiple charges against a single defendant is otherwise proper under Rule 8(a). Federal Rule of Criminal Procedure 14(a) provides that "[i]f the joinder of offenses … appears to prejudice a defendant … the court may order separate trials of counts … or provide any other relief that justice requires."  A party who seeks severance has "the burden of demonstrating 'a strong showing of prejudice.'" *United States v. Branch*, 537 F.3d 328, 341 (4th Cir. 2008) (quoting

4

*United States v. Goldman,* 750 F.2d 1221, 1225 (4th Cir. 1984)). A defendant cannot seek

severance merely on the grounds "that joinder makes for a more difficult defense," nor can he do

so because "a separate trial might offer a better chance of acquittal." *Goldman*, 750 F.2d at 1225.


## III. DISCUSSION

### A. Joinder of Count One with the remaining counts is permissible under Rule 8

Joinder is proper because the charges in Count One and the other counts are both "of the

same or similar character" and "connected with or constitute parts of a common scheme or plan."

Fed. R. Crim. P. 8(a).

The indictment charges the Defendant with various offenses arising from an alleged sex

trafficking operation.  As the Government notes, Count Five – which alleges that the Defendant

violated the Travel Act, 18 U.S.C. § 1952 (a)(3)(A) and 2 – is an "overarching count" that alleges

the Defendant used facilities of interstate and foreign commerce (cell phones, vehicles, and

hotels) to promote, manage, establish, or carry on unlawful prostitution activities between

October 2018 and around the time of his arrest in January 2024. Dkt. 283 at 3, Dkt. 297 at

paragraphs 14-15. Apart from three obstruction-related offenses, the other counts arise from

particular trips where the Defendant allegedly trafficked victims or from other conduct through

which the Defendant facilitated his alleged sex trafficking enterprise. The counts identify the

alleged victim(s) associated with each offense and the timeframe of the conduct at issue. Count

One alleges that the Defendant conspired with other individuals to traffic at least one adult

female victim, including AV4, between April 2019 and October 19, 2019.

The Defendant argues that the general nature of the other sex trafficking-related charges –

that the Defendant lured women with substance use issues into prostitution and then essentially

trapped them by threatening to withdraw their access to drugs if they stopped working for him – is so different from the armed kidnapping alleged in Count One that there is no logical connection between the counts. Dkt. 273 at 5-6. *See United States v. Cardwell*, 433 F.3d 378, 385 (4th Cir. 2005) (explaining that a logical relationship must exist between joined counts for a court to find that the offenses charged are connected with or constitute parts of a common scheme or plan under Fed. R. Crim. P. 8(a)). Moreover, the Defendant contends that the use of the internet and hotels cannot provide connect Count One to the other counts for joinder purposes because these are merely "common implements of a black market" that facilitates modern prostitution. Dkt. 273 at 6. The Defendant argues that if internet usage and hotels provided the necessary logical connection, then all sex trafficking cases could be joined together. *Id*. Even if the usage of facilities like hotel provided a basis for finding that a logical connection exists between Count One and the remaining counts, the Defendant argues that "the way the facility was allegedly used in Count 1 is … simply too different from the way the facilities were used in the other Counts for there to be sufficient similarity or logical connection. In one case, the hotel rooms were simply used as a site to perpetuate prostitution. In the other, they are a scene for an armed kidnapping." Dkt. 273 at 7.

The Defendant's points fall short of addressing the nature of how he allegedly directed the sex trafficking operation at issue in this case. His alleged approach to coercing victims into commercial sex work – not just the use of instrumentalities of interstate commerce – provides a logical connection between Count One and the other counts. The Defendant is accused of running a human trafficking organization from October 2018 through January 2024 in which he preyed on women – many of whom suffered from drug addiction – and coerced them into performing sex acts for his own personal profit. Dkt. 282. To be sure, there is no evidence that

6

AV4 was addicted to drugs prior to her encounter with the Defendant in 2019. But as the Government notes, many of the alleged facts of AV4's victimization are consistent with how the Defendant is alleged to have treated other victims. More specifically, the Defendant is accused of offering narcotics to AV4 (though she declined); using force and threats of violence against AV4; taking photographs of AV4 for commercial sex advertisements; arranging "dates" for AV4; and informing AV4 that she would return with him to Virginia, the state where his alleged trafficking operation was based. Dkt. 282 at 5-7. The Government also alleges that once law enforcement officers arrived at the hotel, the Defendant provided a false name and faked a medical emergency. *Id*. at 7. Taken together, these actions are consistent with the patterns of misconduct that the Government proffers that its evidence will show at trial. *Id*. at 2-3. Significantly, drug coercion was just one of the Defendant's alleged tactics. He is also accused of using physical violence and threats of violence against multiple victims. *Id*. at 3 (discussing specific allegations involving other alleged victims). The extent of his control – over travel to hotels, advertisement of sex services, and the coordination of "dates" – are also common threads throughout the offenses at issue in this case. *Id*. at 2-3. Moreover, the Government states that at trial its evidence will show that the Defendant often falsely identified himself to law enforcement by referring to himself as "Eddie Turner" and by faking medical emergencies. *Id*. at 3.

Rule 8 does not require that the underlying conduct in each joined count be precisely the same. Instead, offenses of a "*similar* character" may be joined. Fed. R. Crim. P. 8(a) (italics added). The Defendant's alleged conduct toward AV4 – offering her drugs, engaging in violence, and forcing her to engage in prostitution – is reflective of his overarching approach to compelling women to participate in commercial sex acts and exercising significant control over the coordination of those services. *See United States v. Acker*, 52 F.3d. 509, 513 (4th Cir. 1995)

(noting that a consistent *modus operandi* can qualify multiple offenses as being of "similar character" under Rule 8(a)). This analysis also supports the joinder of Count One with the remaining counts on the grounds that the alleged underlying conduct in Count One is "connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Though AV4 is just one alleged victim, many aspects of her victimization discussed above are consistent enough with the experiences of other alleged victims to find a "logical relationship" between the offenses at issue. *See Cardwell*, 433 F.3d at 385. Overall, the indictment and the factual allegations that the Government anticipates presenting at trial paint a picture of a sex trafficking operation that (1) utilized a variety of means, including drug use and physical force, to coerce women into prostitution and (2) tightly controlled the coordination of commercial sex "dates." Accordingly, the Court finds that there was no misjoinder of Count One with the other counts.

## B. Severance is not required under Rule 14(a)

Federal Rule of Criminal Procedure 14(a) provides for severance "[i]f the joinder of offenses … appears to prejudice a defendant." However, as noted above, a party who seeks severance pursuant to this rule must make "a strong showing of prejudice." *Branch*, 537 F.3d at 341. Severance is not appropriate just because "a separate trial might offer a better chance of acquittal." *Goldman*, 750 F.2d at 1225. Instead, "when defendants properly have been joined under [Rule 8], a district court should grant a severance under Rule 14 *only* if there is a serious risk that a joint trial would ... prevent the jury from making a reliable judgment about guilt or innocence." *Cardwell*, 433 F.3d at 387 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)). Possible sources of prejudice raised in the parties' briefs include the risk that a jury may "confuse and cumulate the evidence" and "convict the defendant of one or both crimes when it would not convict him of either if it could keep the evidence properly segregated" and that the

jury "may conclude that the defendant is guilty of one crime and then find him guilty of the other because of his criminal disposition." *Goldman*, 750 F.2d at 1224 (quoting *United States v. Foutz*, 540 F.2d 733, 736 (4th Cir. 1976)).

The Defendant contends that if Count One were severed, evidence related to it would be inadmissible at trial for the other counts. Dkt. 273 at 9-10. He argues that such evidence would not be admissible under Federal Rule of Evidence 404(b). *Id*. This rule bars the admission of "[e]vidence of any other crime, wrong, or act … to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, it carves out exceptions allowing for prior acts evidence when used "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Defendant argues that the facts of AV4's case are so dissimilar from the other alleged victims' cases in terms of the conduct at issue and individuals involved that the evidence related to Count One would not be probative of any "common plan or intent."  Dkt. 273 at 10-11. He also contends that the differences between the facts of the charged offenses raises the specter of improper propensity evidence under Rule 404(b). *Id*. at 11. The Government, however, argues that the methods the Defendant allegedly used to coerce AV4 into prostitution are similar to the tactics used on other victims. Dkt. 282 at 11. This would be evidence of a "motive, opportunity, plan, and absence of mistake or accident" with regard to his other sex trafficking offenses. *Id*.

As the Fourth Circuit has noted, prior acts evidence must be "sufficiently related to the charged offense." *United States v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010) (quoting *United States v. Mark*, 943 F.3d 444, 448 (4th Cir. 1991)). Thus, "the more closely the prior act is related to the charged conduct—either in time, pattern, or state of mind—the more probative it is

of the defendant's intent or knowledge in relation to the charged conduct." *Id*. But as a general matter, a defendant's mere involvement with a particular type of criminal activity in the past is, standing alone, too tenuous of a connection to be admissible in a subsequent case alleging similar misconduct. There must be a "nexus" between the prior act and the charged conduct – and factors relevant to establishing nexus include the "time, manner, place, or pattern of conduct." *Id*.

The Fourth Circuit has articulated a four-part test for assessing the admissibility of prior acts evidence under Rule 404(b) (and Fed. R. Evid. 403)[5]:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes.
>
> (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense.
>
> (3) The evidence must be reliable. And
>
> (4) [T]he evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

*United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997).

Here, if Count One were severed, evidence related to the alleged events involving AV4 would, in all likelihood, be admissible at trial for other counts.

As to the first *Queen* factor, the Government represents that the Defendant tried to recruit AV4 in a similar manner to how he engaged with other alleged victims. Dkt. 282 at 11 ("Most of [the Defendant's] victims describe an offer of narcotics, sexual abuse by [the Defendant], and some sort of coercion or threats to compel them to engage in commercial sex."); *see also id*.

---

[5] Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. "

(alleging AVs 1, 2, 3, 4, 6, 7, 8, and 9 were exploited by similar methods). While some of the Defendant's alleged conduct toward AV4 may have been more extreme in certain respects compared to how he allegedly treated other victims, his alleged methods of control and other aspects of his conduct, like using a false name, are similar enough to the other charged sex trafficking offenses to be relevant for establishing the Defendant's intent, motive, or plan under Rule 404(b). *See United States v. Wysinger*, 2018 WL 4956515, at *5 (W.D. Va. Oct. 12, 2018) (concluding, as part of Rule 404(b) analysis, that evidence of defendant's uncharged prior attempts to recruit women into a commercial sex operation was relevant to show the Defendant's "intent, lack of mistake, and his modus operandi" in a sex trafficking conspiracy case).

Based on the existing record, it is hard to assess the second *Queen* factor to determine the necessity of the evidence related to AV4. But, as discussed above, it is certainly relevant and probative of the Defendant's intent, motive, and plan with respect to other sex trafficking charges.

As for the third *Queen* factor, the Court acknowledges that the Defendant has questioned AV4's credibility (although such arguments have primarily been raised with respect to his motion to dismiss Count One. *See, e.g.*, Dkt. 330 at 9-11.). It is unclear what specific evidence related to the Defendant's alleged actions toward AV4 and his interactions with law enforcement at the hotel would be introduced with respect to the other offenses if Count One was severed. Accordingly, the Court will not grant severance on this basis.

Finally, evidence related to the Defendant's alleged conduct toward AV4 would have probative value that is not "substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." *Queen*, 132 F.3d at 997. The Defendant characterizes the facts related to AV4 and Count One as "truly the stuff of

nightmares" and argues that the admission of evidence related to AV4 in separate trials for the other counts (or a joint trial of Count One with the remaining counts) would inflame the jury. Dkt. 273 at 11-12. However, the Court agrees with the Government that this line of reasoning fails to account for violence that other alleged victims reportedly experienced or observed. Dkt. 282 at 3, 10. In other words, the alleged facts of AV4's encounter with the Defendant are not so salacious compared to other alleged victims to overshadow the other counts and, in turn, create unfair prejudice that "substantially outweigh[s]" the probative value, Fed. R. Evid. 403, or "prevent[s] the jury from making a reliable judgment about guilt or innocence." *Cardwell*, 433 F.3d at 387 (discussing Fed. R. Crim. P. 14). Limiting instructions can also reduce potential prejudice. *See, e.g., id*. at 388 (concluding district court did not err in failing to sever felon-in-possession firearm charge and murder-for-hire counts under Rule 14(a) in part because of the court's limiting instruction to the jury to separately consider each charge and evidence related to it); *Queen*, 132 F.3d at 997 (referring to "a limiting jury instruction, when requested by a party, explaining the purpose for admitting evidence of prior acts" as a means of providing "additional protection against the pitfalls the rule [Rule 404(b)] protects against.").

In sum, the Defendant has not made "a strong showing of prejudice," *Branch*, 537 F.3d at 341, to merit severance under Rule 14(a).

## CONCLUSION

For the reasons provided, the Defendant's objection to the joinder of Count One to the remaining counts, or, in the alternative, his motion to sever, is **DENIED**. An accompanying Order will be entered.

Entered this  2nd day of July, 2025.

12

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE