CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 30, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
       DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:24-cr-00008 |
| v. | **MEMORANDUM OPINION** |
| BRIAN LAMONT TURNER, | |
| *Defendant.* | JUDGE NORMAN K. MOON |

The Defendant, Brian Lamont Turner, moves to suppress the contents of his Google accounts that the Government obtained through a search warrant issued September 13, 2024. Dkt. 286; Dkt. 286-6. His central argument is that before the Government even obtained the warrant, it unlawfully "seized" his records when it requested on a number of occasions in 2023 that Google preserve the content of his accounts pursuant to the Stored Communications Act. The Government did not have a warrant at the time it sent preservation letters to Google, although it obtained one before receiving the account contents. As discussed below, the Defendant's motion is denied because Google was *not* engaged in state action when it complied with preservation requests. Accordingly, the Fourth Amendment is not implicated. Moreover, even if a "seizure" occurred within the meaning of the Fourth Amendment, suppression is not warranted because (a) the Defendant failed to show but-for causality between the purported constitutional violation and the evidence in the Government's possession and (b) the "good faith exception" to the exclusionary rule applies.

## I. BACKGROUND

The Stored Communications Act ("SCA") allows the Government to issue "preservation" requests to providers of electronic communication services and remote computing services. 18 U.S.C. § 2703(f). Upon receipt of such a request, the service provider must "preserve records and other evidence in its possession pending the issuance of a court order or other process." *Id*. § 2703(f)(1). Those records "shall be retained" for a 90-day period, which can be extended by another 90 days at the Government's request. *Id*. § 2703(f)(2).

The Government issued SCA preservation requests to Google during its investigation into the Defendant's alleged sex trafficking activity. The FBI sent preservation letters to Google on February 28, 2023, Dkt. 286-1; June 9, 2023, Dkt. 286-3; August 3, 2023, Dkt. 286-4; August 31, 2023, Dkt. 286-2; and October 16, 2023, Dkt. 286-5. These letters requested that Google preserve various records – including contents of communications (emails, pictures, messages, files), location history, browsing history, and content stored on "Google Drive" – for specific Google accounts associated with the Defendant. *Id*.

On September 13, 2024, the Government obtained a search warrant for information from four "target" Google accounts associated with the Defendant, three of which had been the subject of prior preservation letters.[1] Dkt. 286-6. The Government sought, among other things, account information (user name, primary and secondary email addresses, IP addresses, sign in locations), cellular phone information of devices linked to the Google accounts, email messages, and

---

[1] The four accounts were itsthatdrip@gmail.com, bturner229011@gmail.com, ngetitgo@gmail.com, and moonlitentservices@gmail.com. The "itsthatdrip" account was the subject of a February 28, 2023 preservation letter, a preservation extension request dated June 9, 2023, and a October 16, 2023 preservation letter. Dkts. 286-1, 286-3, and Dkt. 286-5. Two of the other accounts – "bturner22901" and "ngetitgo" – were listed in a preservation letter dated August 31, 2023. Dkt. 286-2. The fourth account, "moonlitentservices," is not listed in the preservation-related correspondence attached to the Defendant's motion.

records related to different Google applications (including Google Voice, Google Wallet, Google Drive, and Google Hangouts). *Id*. at 3-4.

Google subsequently turned over responsive records to the Government. Dkt. 286 at 6. The Defendant contends these records included the "contents" that Google preserved in response to the earlier preservation requests. *Id*.

The Defendant now asks this Court to suppress the Google account contents as "the product of an unlawful seizure" under the Fourth Amendment. He specifically contends that (1) Google's preservation of the accounts was state action under the Fourth Amendment; (2) the preservation was a warrantless seizure in violation of the Fourth Amendment; and (3) that the contents of the accounts later turned over to the Government in response to the September 2024 warrant should be suppressed as fruits of the poisonous tree.[2] Dkt. 286 at 7-18.[3]

## II. FOURTH AMENDMENT ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.  It is "directed exclusively at state action." *United States v. Kinney*, 953 F.3d 863, 865 (4th Cir. 1992). Thus, the gateway question for the Court's consideration of the instant motion is whether Google acted as the Government's agent when it complied with the various preservation letters. The Defendant contends that the preserved information was included in the materials that Google turned over to the Government pursuant to the search warrant issued on September 13,

---

[2] The Defendant also argues that the Google records should be excluded because they were not timely disclosed. Dkt. 286 at 18-21. However, this issue is mooted by the fact that the trial date was twice continued after the filing of the Defendant's motion and is now set to start September 8, 2025. The Defendant and his counsel have had sufficient time to review the Google records during trial preparation.

[3] There is a discrepancy between the pagination affixed to the bottom of the Defendant's motion and the ECF pagination at the top right corner of each page. For clarity, the Court cites to ECF pagination.

2024. Dkt. 286 at 6; Dkt. 333-1 (list of digital folders from Google with names that include the word "preserved" for information associated with bturner229011, itsthatdrip, and ngetitgo accounts).

"Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602, 614–15 (1989) (internal quotation marks and citations omitted).

As noted above, the SCA allows the Government to issue preservation letters to certain online service providers. 18 U.S.C. § 2703(f). Neither party contests that this provision applies to Google.

The specific language in the Act is as follows:

(f) Requirement to preserve evidence.—

(1) In general.--A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process.

(2) Period of retention.--Records referred to in paragraph (1) shall be retained for a period of 90 days, which shall be extended for an additional 90-day period upon a renewed request by the governmental entity.

18 U.S.C. § 2703(f). When a provider preserves data, it "simply archives all data existing on the service's servers at the time the preservation request was executed." *United States v. Colbert*, No. 23-cr-40019, 2024 WL 2091995, at *2 (D. Kan. May 9, 2024).

The SCA's preservation provision appears in a section of the Act that describes the different circumstances in which the Government may require certain third-party entities to disclose communication records and subscriber information and the formal process that the Government must use (warrant, subpoena, court order), depending on the information sought. *Id.* at § 2703(a)-(d). "Importantly, a preservation request provides nothing to the Government. To receive the underlying information retained by a preservation request, the Government must obtain a search warrant, court order, or administrative subpoena." *Colbert*, 2024 WL 2091995 at *2. The Defendant, however, argues that the act of preserving digital information is a Fourth Amendment seizure because Google did so at the Government's direction. Dkt. 286 at 7-9.

At the outset, the Court notes that there is limited case law interpreting the SCA's preservation provisions. The Court is unaware of Fourth Circuit precedents that address the precise issues the Defendant raises,[4] nor is there a robust body of persuasive authority. Most of the existing case law interpreting Section 2703(f) arises from a handful of district court cases and a few Ninth Circuit decisions.

Here, the parties contend that two different Supreme Court precedents should guide this Court's analysis on the threshold question of whether Google engaged in state action. The Defendant relies on *Skinner v. Ry. Lab. Execs.' Ass'n*, 489 U.S. 602 (1989), Dkt. 286 at 7, while the Government cites *California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974). Dkt. 322 at 3. The Court finds the latter more on point because it deals with recordkeeping requirements analogous to those in Section 2703(f).

---

[4] In a recent decision, the Fourth Circuit expressly declined to address the question of whether a Section 2703(f) preservation request amounts to a seizure within the meaning of the Fourth Amendment. *United States v. Deritis*, 137 F.4th 209, 217 (4th Cir. 2025).

The Defendant contends that Google was an "instrument" or "agent" of the Government, *Coolidge v. New Hampshire,* 403 U.S. 443, 487 (1971), because it played a critical role in copying data for possible Government use. Dkt. 286 at 7. He emphasizes that the Government "directed what Google must do" because the SCA expressly mandates that Google, as a relevant service provider, "take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process." 18 U.S.C. § 2703(f)(1). The Defendant argues that cases like *Skinner v. Ry. Lab. Execs.' Ass'n* support the proposition that compelling a private party to engage in a search or seizure transforms the party's action into state action. In *Skinner*, the Supreme Court held that federal regulations related to how private railroads drug tested their employees in certain circumstances implicated the Fourth Amendment because there were "clear indices of the Government's encouragement, endorsement, and participation" in the regulatory scheme. *Id*. at 615-16. The Court noted that "specific features of the regulations" led to this conclusion:

> The regulations, including those in Subpart D, pre-empt state laws, rules, or regulations covering the same subject matter, 49 CFR § 219.13(a) (1987), and are intended to supersede "any provision of a collective bargaining agreement, or arbitration award construing such an agreement," 50 Fed.Reg. 31552 (1985). They also confer upon the FRA [Federal Railroad Administration] the right to receive certain biological samples and test results procured by railroads pursuant to Subpart D. § 219.11(c). In addition, a railroad may not divest itself of, or otherwise compromise by contract, the authority conferred by Subpart D. As the FRA explained, such "authority ... is conferred for the purpose of promoting the public safety, and a railroad may not shackle itself in a way inconsistent with its duty to promote the public safety." 50 Fed.Reg. 31552 (1985). Nor is a covered employee free to decline his employer's request to submit to breath or urine tests under the conditions set forth in Subpart D. See § 219.11(b). An employee who refuses to submit to the tests must be withdrawn from covered service. See 4 App. to Field Manual 18.

*Id*. at 615. The Court accordingly held that the Government had "removed all legal barriers to the testing" authorized by the regulations and "made plain not only its strong preference for testing, but also its desire to share the fruits of such intrusions." *Id*.

Compared to the regulations at issue in *Skinner*, the statutory scheme in 18 U.S.C. § 2703(f) is far simpler and lacks the same degree of Government participation in the actions taken by private entities like Google. The SCA's preservation provisions merely require that a service provider retain records for a stated period. Critically, it does not require the information be turned over to the Government *until* "the issuance of a court order or other process." 18 U.S.C. § 2703(f)(1). Unlike the Federal Railroad Administration's "right to receive certain biological samples and test results procured by railroads" in *Skinner*, 489 U.S. at 615, the Government here has no "right" to any of the digital data until it follows other requirements for obtaining the information (i.e., through a court order, subpoena, or warrant pursuant to 18 U.S.C. § 2703(a)-(d)).[5] Here, this was done with a warrant. Dkt. 286-6.

---

[5] The Ninth Circuit has also addressed arguments about *Skinner*'s applicability to the Stored Communications Act. In *United State v. Rosenow*, a defendant argued that private searches performed by electronic service providers ("ESPs") pursuant to the SCA and the Protect Our Children Act were a form of governmental action under *Skinner* and required Fourth Amendment scrutiny. 50 F.4th 715, 729-30 (9th Cir. 2022). The Court noted significant distinctions between the regulations in *Skinner* and those in the SCA:

> But unlike the regulations at issue in *Skinner*, which explicitly authorized railroads to administer drug and alcohol tests to their employees based on "reasonable suspicion," *Skinner*, 489 U.S. at 611, 109, the Stored Communications Act does not authorize ESPs to do anything more than access information already contained on *their* servers as dictated by their terms of service. …
>
> Under both the Stored Communications Act and the Protect Our Children Act, Yahoo and Facebook are free to choose not to search their users' data. Therefore, when they do search, they do so of their own volition.
>
> Moreover, unlike the regulations in *Skinner*, which prohibited railroad companies from contracting away their right to require drug tests, 489 U.S. at 615–16, neither statute at issue here prevents an ESP from contracting away its right to search users' communications. *See United States v. Stevenson*, 727 F.3d 826, 830 (8th Cir. 2013). Thus, the statutes do not have the "clear indices of the

More relevant comparisons are found in statutes that require a private party to maintain specific records. *California Bankers Ass'n v. Shultz* is particularly instructive.

In *Shultz*, the Supreme Court addressed a constitutional challenge to certain federal recordkeeping requirements under the Bank Secrecy Act and implementing regulations.[6] Financial institutions were required "to maintain records of the identities of their customers, to make microfilm copies of certain checks drawn on them, and to keep records of certain other items." 416 U.S. at 30. The plaintiffs, including individual bank depositors, argued that the recordkeeping requirements violated the Fourth Amendment. *Id*. at 52. Specifically, they "urge[d] that when the bank makes and keeps records under the compulsion of the Secretary's regulations it acts as an agent of the Government, and thereby engages in a 'seizure' of the records of its customers." *Id*. The Court rejected such arguments. It expressly held that "the mere maintenance of the records by the banks under the compulsion of the regulations invaded no Fourth Amendment right of any depositor." *Id*. at 54.  The Court emphasized that neither the statutory provisions nor the regulations "require that any information contained in the records be disclosed to the Government; both the legislative history and the regulations make specific reference to the fact that access to the records is to be controlled by existing legal process." *Id*. at 52 (emphasis added). Thus, additional process was required before the Government could even obtain the records.

---

Government's encouragement, endorsement, and participation" sufficient to implicate the Fourth Amendment. *Skinner*, 489 U.S. at 615–16.

*Id*. at 730. Following *Rosenow*, at least one district court has applied the decision to hold that Google was not a government agent just because it preserved information already in its possession pursuant to a Section 2703(f) request. *United States v. Dallmann*, No. 2:22-cr-00030, 2024 WL 2700759, at *8-9 (D. Nev. May 24, 2024).

[6] Congress enacted the Bank Secrecy Act of 1970 "following extensive hearings concerning the unavailability of foreign and domestic bank records of customers thought to be engaged in activities entailing criminal or civil liability." *Shultz*, 416 U.S. at 26. "The express purpose of the Act is to require the maintenance of records, and the making of certain reports, which 'have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings.'" *Id*. (citing 12 U.S.C. § 1829(b)(a)(2)).

The same is true of the SCA preservation provisions. It does not direct providers to automatically transmit preserved information to the Government. Instead, the Government can only access records after taking other steps, such as obtaining a warrant, subpoena, or court order. 18 U.S.C. § 2703(f)(1) ("A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession *pending the issuance of a court order or other process*) (italics added); *see also* 18 U.S.C. § 2703(a)-(d) (describing required process for obtaining various kinds of records). Consistent with *Shultz*, Google did not become a state actor just because it complied with the SCA preservation requests. *See* 416 U.S. at 54 ("That the bank in making the records required by the Secretary acts under the compulsion of the regulation is clear, but it is equally clear that in doing so it neither searches nor seizes records in which the depositor has a Fourth Amendment right."). Indeed, all Google did was preserve records that already existed on its servers. For Fourth Amendment purposes, no state action occurred until the Government obtained the warrant for Google's data. *See United States v. Dallmann*, No. 2:22-cr-00030, 2024 WL 2700759, at *8 (D. Nev. May 24, 2024) (holding that Google did not become a government agent "by merely preserving information already in its possession" pursuant to a 18 U.S.C. § 2703(f) preservation request). This conclusion provides sufficient reason for the Court to deny the motion to suppress. Accordingly, it need not, and does not, address other issues raised in the parties' briefs related to whether preservation of records is a Fourth Amendment "seizure," and if so, whether the seizure was reasonable. See Dkt. 286 at 9-14; Dkt. 322 at 5-7, 10-11.

## III. SUPPRESSION IS NOT AN APPROPRIATE REMEDY

Even if the Defendant could establish that Google engaged in state action and conducted a warrantless "seizure" of the Google account information, there are two independent reasons that suppression would not be warranted.

First, "[b]ut-for causality" is a necessary condition for suppression of evidence. *Hudson v. Michigan*, 547 U.S. 586, 592 (2006). In other words, "[a] Fourth Amendment violation requires suppression of evidence only if the violation is the "but-for" cause of the government obtaining the evidence." *United States v. Rosenow*, 50 F.4th 715, 736 (9th Cir. 2022) (finding lack of causality between preserved digital data and Government's ability to obtain evidence for conviction in a child pornography case). Other courts analyzing alleged Fourth Amendment violations arising from Section 2703(f) preservation requests have applied this principle, finding that suppression is not warranted when a defendant fails to establish that preserved records were turned over to the Government. *See, e.g., Rosenow*, 50 F.4th at 736 (explaining, in part, that a criminal defendant had "not demonstrated that the data that Facebook ultimately produced to the government came from a copy of his data maintained in response to a preservation request"); *United States v. Perez*, 798 Fed. Appx. 124, 126 (9th Cir. 2020) ("The mere fact that a preservation request was made and granted does not in and of itself show that Facebook responded to the Government's subsequent search warrant with data from the preservation request, instead of simply creating a contemporaneous, new copy of the Facebook account at the time of the search warrant."); *United States v. Zwiefelhofer*, No. 2:19-cr-150, 2023 WL 4931899, at *2 (M.D. Fla. Aug. 2, 2023) (finding "no causal connection between the preservation letters and any evidence in this case.").

The instant case is distinct because the Defendant *does* provide evidence that Google turned over preserved materials to the Government when it complied with the warrant. Dkt. 333

at 9 (noting that documents received from Google in response to search warrant included preserved accounts); Dkt. 333-1 (list of folder names which include the word "preserved" for information associated with three Gmail accounts). Nevertheless, the record does *not* show that the Defendant deleted or modified his account contents in the period between Google's compliance with the preservation letters and its compliance with the September 2024 warrant such that the only reason the Government now possesses certain evidence is because it was previously preserved. He also does not allege that he took such actions.[7]  For example, he does not contend that the Government now possesses emails that (a) Google copied in the initial set of preserved records and (b) that he deleted before Google turned over the records pursuant to the warrant. Put differently, the Defendant has not shown that the records Google produced in response to the warrant "*only* could have come from a preserved copy." *Rosenow*, 50 F.4th at 736 (emphasis added). This undercuts the causality requirement because it is entirely possible that the Government would have received the exact same materials from Google regardless of if it had issued the preservation requests. Based on the existing record, the "but-for" causality required for suppression is missing.

Second, the "good faith exception" to the exclusionary rule precludes suppression. This exception "exists where government agents acted with an objectively reasonable 'good faith' belief that their conduct was lawful." *United States v. Taylor*, 54 F.4th 795, 803 (4th Cir. 2022) (citing *Davis v. United States*, 564 U.S. 229, 238 (2011)). Relevant to the instant motion is *Illinois v. Krull*, where the Supreme Court held that the exclusionary rule is not applicable when

---

[7] At oral argument, the Court asked whether the Defendant had tried to delete preserved information:

> The Court: And so I take it he had not tried to delete it himself?

> Defense Counsel: He was not on notice. That's all the evidence we have.

Dkt. 360 (Mar. 13, 2025 Hearing Trans.) at 42.

law enforcement obtains evidence in objectively reasonable reliance upon a statute later

determined to violate the Fourth Amendment. 480 U.S. 340, 342 (1987). In *Krull*, the Court

found that the good faith exception applied where officers acted pursuant to an Illinois statute

that authorized warrantless administrative searches even though the state supreme court

subsequently found it unconstitutional. The Court emphasized that the "prime purpose" of the

judicially-created exclusionary rule "is to deter future unlawful police conduct and thereby

effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures."

*Id*. at 347. Then the Court held that suppressing evidence when an officer relies on a statute that

is not "clearly unconstitutional" fails to serve deterrence purposes:

> The application of the exclusionary rule to suppress evidence
> obtained by an officer acting in objectively reasonable reliance on
> a statute would have as little deterrent effect on the officer's actions
> as would the exclusion of evidence when an officer acts in
> objectively reasonable reliance on a warrant. Unless a statute is
> clearly unconstitutional, an officer cannot be expected to question
> the judgment of the legislature that passed the law. If the statute is
> subsequently declared unconstitutional, excluding evidence
> obtained pursuant to it prior to such a judicial declaration will not
> deter future Fourth Amendment violations by an officer who has
> simply fulfilled his responsibility to enforce the statute as written.
> To paraphrase the Court's comment in [*United States v. Leon*, 468
> U.S. 897, 921 (1984)]: "Penalizing the officer for the [legislature's]
> error, rather than his own, cannot logically contribute to the
> deterrence of Fourth Amendment violations."

*Id*. at 349-50.

Krull is applicable to the instant case. To be sure, the SCA preservation provision – which

allows for warrantless preservation requests – is different than the statute in *Krull*, which

authorized warrantless administrative searches. But, as the Government correctly notes in its

brief, both the SCA and Illinois statute reflect a legislative determination that certain information should be made available to law enforcement without a warrant.[8] Dkt. 322 at 12-13.

Here, the Government acted in "objectively reasonable reliance" on a statute that was not "clearly unconstitutional." *Krull*, 480 U.S. at 349. The Government followed the requirements of 18 U.S.C. § 2703(f) when it issued the preservation letters to Google. Moreover, Google

---

[8] The Defendant contends that the SCA's preservation provision does not clearly allow for warrantless preservation requests. Dkt. 286 at 16-17 ("When Congress enacted 18 U.S.C. § 2703(f), it made no legislative judgments about what law enforcement seizures are permitted or when they are constitutional. It did not supplant or override the Fourth Amendment. That is because the preservation statute is not directed to governments at all. The Fourth Amendment governs when a preservation request can be made, and the preservation statute does not say otherwise."); Dkt. 333 ("[T]he text of § 2703(f) is unclear about when the government can request preservation and what records it covers."). The Court understands the Defendant's position to be, in essence, that the Government exploited a purported ambiguity in the preservation statute and engaged in an "unconstitutional application" of the statute when it directed a warrantless seizure of account contents by asking Google to preserve the information. Dkt. 286 at 18. He contends that *Krull* does not apply because the mistake here belongs to law enforcement instead of Congress." Dkt. 286 at 16; *see also id.* at 18 ("*Krull* only applies when a legislature enacts an unconstitutional law that law enforcement reasonably followed. Here, however, Congress enacted a perfectly constitutional law. Law enforcement's unconstitutional application of the preservation statute is law enforcement's fault, not the fault of Congress.")

But "unless there is some ambiguity in the language of a statute, a court's analysis must end with the statute's plain language." *Hillman v. I.R.S.*, 263 F.3d 338, 342 (4th Cir. 2001) (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917) and *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988)). To determine if ambiguity is present, a court considers "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Ignacio v. U.S.*, 674 F.3d 252, 254 (4th Cir. 2012) (quoting *United States v. Thompson–Riviere*, 561 F.3d 345, 354–55 (4th Cir. 2009)).

Here, the Court finds no ambiguity because the statute plainly allows for the Government to make preservation requests without a warrant or other legal process. The provision at issue here, 18 U.S.C. § 2703(f), refers to legal process by stating that the relevant internet service provider shall preserve records "pending the issuance of a court order or other process." 18 U.S.C. § 2703(f)(1). Because this provision appears in a section of the SCA that is largely about the procedures the Government must follow to obtain various types of records, the language about "a court order or other process" means that the Government must adhere to specific procedures for the service provider to disclose certain kinds of preserved information. For example, Sections 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) each provide for circumstances in which a warrant is required for the contents of wire or electronic communications and "other information pertaining to a subscriber." Thus, preservation requests are not made in some sort of law-free zone because the critical act of disclosing information to the Government is contingent on law enforcement obtaining legal process based on the kind of information sought. Given that Section 2703 thoroughly provides for various procedural requirements that the Government must follow to obtain information from internet service providers, if Congress had intended to impose a warrant requirement or some other process as a prerequisite for sending a preservation request, it could have surely done so. That Congress declined to incorporate such a requirement into the text of Section 2703(f) is telling. Congress made a legislative determination that preservation letters do not require a warrant or court order.

In sum, the Court is not persuaded that law enforcement adopted an unreasonable or unlawful interpretation of Section 2703(f) such that *Krull* is inapplicable. Law enforcement adhered to the plain text of the statute when it issued preservation letters to Google without a warrant.

disclosed account contents to the Government only after the Government obtained a search warrant pursuant to other provisions of Section 2703.[9] Dkt. 286-6; *see* 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) (provisions regarding when warrants are required to obtain certain information). The Court is not aware of any judicial decisions that have found Section 2703(f) preservation requests to violate the Fourth Amendment. Thus, the Government would have had no reason to believe that it was effecting an unconstitutional seizure or otherwise violating the Fourth Amendment by issuing such requests to Google.

*Krull*'s insights about the key rationale of the exclusionary rule – deterring future unlawful acts by law enforcement – are particularly relevant here. As another district court recently noted in applying *Krull* to a similar challenge to preservation requests, "Congress empowered government officials to request the preservation of data per Section 2703(f), and there is no reason the agents in this case should not have relied on that judgment." *United States v. Velez*, No. 8:24-cr-456, 2025 WL 1898677, at *3 (M.D. Fla. July 9, 2025); *see also Colbert*, 2024 WL 2091995 at *9 (holding that even if Section 2703(f) preservation requests violated the Fourth Amendment, the good faith exception applies); *Zwiefelhofer*, 2023 WL 4931899 at *3 (same). To the extent that Section 2703(f) authorizes unconstitutional seizures, such an error is attributable to Congress. Thus, suppression under these circumstances – where the Government followed the plain language of the statute – would not serve the exclusionary rule's primary

---

[9] Although the Defendant does not expressly argue that the good faith exception is inapplicable based on time gap between the preservation letters and the warrant, it is worth noting that under 18 U.S.C. 2703(f)(2), a service provider must retain preserved records for 90 days with the possibility of a 90-day extension. The Government concedes that it "did not obtain legal process to Google within the 90-day preservation period," but notes that "nothing in § 2703(f) sets a deadline for the Government to seek legal process." Dkt. 322 at 13. The Court agrees. Section 2703(f) only sets a minimum period that a service provider must retain preserved records. It does not control when the Government must obtain a warrant or other legal process. Thus, Google could have deleted the information after the applicable retention period associated with each preservation letter, and the Government could have sought a warrant at any time.

14

purpose of preventing future Fourth Amendment violations. *Krull*, 480 U.S. at 349-50.

Accordingly, the good faith exception renders suppression inappropriate.

In sum, assuming *arguendo* that the Defendant could establish that the Government's preservation requests to Google amounted to unconstitutional "seizures" of his Google account contents, the lack of a concrete causal connection between the purported constitutional violation and the evidence later disclosed to law enforcement pursuant to a warrant, as well as the good faith exception, would lead the Court to deny the Defendant's motion to suppress.

## **CONCLUSION**

For the reasons provided above, the Defendant's motion to suppress the contents of the Google accounts, Dkt. 286, is **DENIED**. The Court will enter an accompanying Order on this date.

Entered this <u>30th</u> day of July, 2025.

*Norman K Moon*

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE