CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
10/30/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cr-00008 |
| | ) | |
| BRIAN LAMONT TURNER | ) | |

## MEMORANDUM OPINION

This is Defendant Brian Lamont Turner's second attempt to suppress the information seized from an account he maintained on a website commonly called SkipTheGames ("STG"). The Court previously denied a motion to suppress this information, but Turner has filed a Supplemental Motion to Suppress Unlawful Search of SkiptheGames Account asserting theories which he claims were not fully developed or addressed in the Court's earlier decision. Dkt. 408. Turner's motion fails on multiple grounds. First, STG was not a government agent when it voluntarily provided its records regarding Turner's account to the FBI. Second, Turner's theory that the FBI trespassed on his property is not recognized by the Supreme Court as the records relate to purely electronic transmissions. Third, even if the propriety of the FBI obtaining the STG files is analyzed under a traditional Fourth Amendment property-based theory, STG could produce the documents under the third-party doctrine. Finally, Turner consented to disclosure of his account information through STG's Terms of Service. Accordingly, the motion is **DENIED**.

## FACTS

SkipTheGames is a classified advertising platform that primarily caters to the advertisement of adult entertainment services. On February 27, 2023, FBI Tactical Specialist Tyler Blevins contacted Samuel Hanka, an STG representative, requesting information about an account identified as "Stormy" that was "allegedly posting non-consensual ads." Dkt. 285-1 at

12. This account linked to the email "itsthatdrip@gmail.com," which was later identified as belonging to Turner. Agent Blevins acknowledged that when he contacted Hanka, he had no personal knowledge that the posts under the Stormy account related to non-consensual sexual solicitation. Instead, Agent Blevins relied on labels generated by an investigative web-scraping tool to reach this conclusion.

Hanka provided extensive records about the account, including email addresses, IP addresses, dates and links to posts, whether posts were deleted, and spreadsheets containing data about all posts associated with the account. He also provided passwords to accounts and could "undelete" posts that users had removed. The FBI did not seek a subpoena, court order, or search warrant for this information.

Notably, STG's Terms of Service, which users must agree to as a condition of using the website, state that STG may "access, preserve and disclose your account information and Content" if required by law or to comply with legal process." The Terms of Service further grant STG broad rights to use, edit, and disclose user-generated content "for any purpose whatsoever." Dkt. 409-1 at 3–4.

Turner previously filed a motion to suppress any evidence obtained from the search of his SkipTheGames accounts, Dkt. 285. This Court denied the motion in its July 15, 2025 opinion, Dkt. 388, finding that Turner lacked a reasonable expectation of privacy under *Katz v. United States*, 389 U.S. 347 (1967). Turner now raises a supplemental Fourth Amendment claim based on property rights and trespass theory, arguing the government's acquisition of STG records constituted an unlawful trespass to his digital property/effects under *United States v. Jones*, 565 U.S. 400 (2012). Although this theory was raised at the time of the original motion, it was "not fully articulated," and the Court did not address the underdeveloped theory in its prior ruling.

2

## DISCUSSION

I.    **Agency**

The Fourth Amendment protects against unreasonable searches and seizures by government officials and "those private individuals acting as 'instrument[s] or agent[s]' of the Government." *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003) (citations omitted). It does not, however, provide protection against searches by private individuals acting in a private capacity. *Id.* at 344 (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (holding that the Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official")). Thus, "evidence secured by private searches, even if illegal, need not be excluded from a criminal trial." *United States v. Kinney*, 953 F.2d 863, 865 (4th Cir. 1992) (citations omitted).

"The burden of proving that a private party acted as an agent or instrument of the government is on the defendant." *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003). Courts consider two factors in determining whether the search of a private citizen constitutes a search by the government: "(1) whether the Government knew of and acquiesced in the private search; and (2) whether the private individual intended to assist law enforcement or had some other independent motivation." *Jarrett*, 338 F.3d at 344 (citations omitted).

Here, Turner's Fourth Amendment claim fails because STG did not act as an agent of the government when providing records to the FBI. While the FBI requested information from STG, satisfying the first prong, STG had clear independent business motivations.[1] This Court, in its

---

[1] The FBI's lack of personal knowledge about the illegality of the posts in question does not affect the agency analysis. The question is whether STG acted with independent motivation, which the evidence establishes.

previous opinion, stated that "the very nature of a website that contains adult material suggests that the platform has an interest in monitoring postings to ensure that certain content – such as child exploitation or other non-consensual material – is not posted." Dkt. 388 at 17. The relevant inquiry is not whether STG would have acted independently to conduct the search, but whether STG had legitimate business reasons to identify and remove potentially illegal content once alerted to its presence. *See United States v. Jennings*, 653 F.2d 107, 111 (4th Cir. 1981) (finding that a search was private despite being prompted by an anonymous tip from Drug Enforcement Administration agents). Here, Hanka acted voluntarily to serve the purposes of STG, and the fact that he conducted the search at the government's request does not convert a private search into a governmental one. *See United States v. David*, 943 F. Supp. 1403, 1411 (E.D. Va. 1996) ("[I]f [the private actor] was acting to further its own purpose, a necessary element of an agency relationship has not been proven, namely that the agent has acted to benefit the principal."); *United States v. Foley*, No. 93-1838, 1994 WL 144445, at *3 (6th Cir. Apr. 21, 1994) (finding that a mother had an independent motivation to search a suspected drug package despite police instructing her to retrieve the package from the post office).

Turner's reliance on *Commonwealth v. Gumkowski*, 167 N.E.3d 803 (2021), and *United States v. Hardin*, 539 F.3d 404, 420 (6th Cir. 2008), is misplaced. Both cases involved private parties who lacked any independent motivation to act beyond assisting law enforcement. In *Gumkowski*, Sprint produced to law enforcement cell-site location records but had no business reason to do so except to comply with the trooper's request. *See* 167 N.E.3d at 812. Similarly, in *Hardin*, officers "urged the apartment manager to investigate and enter the [defendant's] apartment, and the manager, independent of his interaction with the officers, had no reason or duty to enter the apartment." 539 F.3d at 420.

4

Here, by contrast, STG had a substantial independent motivation to investigate and remove potentially illegal content from its platform. As a website advertising adult entertainment services, STG faces heightened regulatory and legal risks from hosting content involving minors or non-consensual activity. Hanka's email signature underscores this independent motivation, stating in bold text: "**We have a strict no minors and no non-consensual activity policy.**" Dkt. 409-2 at 1. Unlike Sprint's ministerial production of records or the apartment manager's entry into an apartment at the request of police, STG's conduct served its own corporate interests in policing its website. Moreover, even if Hanka also wanted to assist law enforcement, dual motivations do not transform private conduct into government action where legitimate independent motivations exist. *United States v. Cleaveland*, 38 F.3d 1092, 1094 (9th Cir. 1994), *as amended* (Jan. 12, 1995); *see also Jennings*, 653 F.2d at 111.

## II.    Trespass Theory

Even if Hanka's conduct in this case constitutes government action, Turner's novel "trespass-to-digital-chattels" theory fails to provide viable grounds for Fourth Amendment relief. Turner's core argument relies on *United States v. Jones*, 565 U.S. 400 (2012), to establish that Fourth Amendment protection can arise from either infringement on a reasonable expectation of privacy or trespass to property or effects.[2] He contends that even without privacy expectations, the government's acquisition of his digital records constituted an unlawful trespass.

*Jones* recognized that a physical trespass can constitute a Fourth Amendment search, but the Court expressly stated that "[s]ituations involving merely the transmission of electronic

---

[2] In *Jones*, the Court found a Fourth Amendment violation where the government "physically occupied private property" by installing a GPS device on the defendant's vehicle. 565 U.S. at 404.

signals without trespass would *remain* subject to *Katz* analysis." *Id.* at 411. Here, the records STG produced to the FBI involve the transmission of electronic signals from Turner to STG, then from STG to the FBI.[3] *Katz* therefore governs the search at hand, and this Court in its previous opinion denying Turner's motion to suppress the STS records concluded that Turner lacked a reasonable expectation of privacy in the STG records because they were posted to a public-facing website. *See* Dkt. 388 at 15. Turner does not identify any cases applying his trespass theory to online platforms like STG, particularly where no reasonable expectation of privacy exists. Indeed, courts in the Fourth Circuit have expressed skepticism about extending physical trespass concepts to digital spaces. For example, in *United States v. Lowers*, 715 F. Supp. 3d 741 (E.D.N.C. 2024), the court found that the defendant lacked a reasonable expectation of privacy in the storage of child pornography in his Google account. The court further noted that the defendant's "motion to suppress would fare no better if the court instead analyzed its claim under a trespass theory." *Id.* at 758 n.6. Applying such a theory to digital files would "seriously strain[] the language of the Fourth Amendment and be highly artificial." *Id.* (internal quotation marks and citations omitted).

## III.    Property Interest

Even if the Court analyzed the production of the STG electronic documents under a trespass theory as Turner suggests, Turner has failed to establish the necessary property interest in the STG records. This Court found in its earlier ruling that denied the motion to suppress the STG records that the documents were standard business records maintained by STG. That is, the court determined that the produced documents were not Turner's personal property. Dkt. 388 at

---

[3] Turner's motion acknowledges that his theory requires a "physical intrusion," Dkt. 408 at 6, which is not present here.

16.

Under the third-party doctrine, "[t]he Fourth Amendment privacy expectation does not extend to information voluntarily conveyed to third parties." *In re s 2703(d)*, 787 F. Supp. 2d 430, 439 (E.D. Va. 2011). Courts have routinely held that records of an individual held by a third party—even those records containing personal information—are the property of the third party and not the individual. In *United States v. Miller*, 425 U.S. 435, 440 (1976), the Supreme Court held that an individual "can assert neither ownership nor possession" of bank records containing his personal information because they were the bank's business records, even if they contained personal information. Courts in the Fourth Circuit have found similarly that a defendant has no reasonable expectation of privacy in subscriber information, including IP addresses and account identification information. *See, e.g.*, *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010).

Likewise, the STG records belong to STG, which has broad rights to use, store, and manage these records. Turner voluntarily provided both his account information and the contents of his posts to STG in exchange for STG allowing him to use STG's advertising services. STG is not a neutral bulletin board for Turner to post his material. Rather STG has an interest in maintaining and controlling these records for operational purposes. *See Miller*, 425 U.S. at 440–41 (explaining that banks are parties to transactions involving negotiable instruments) (citation omitted).[4] In "revealing his affairs to another," Turner took the risk "that the information [would] be conveyed . . . to the Government." *Id.* at 443. STG's terms of service reinforce this conclusion, explicitly stating that user-provided content becomes "non-confidential and non-

---

[4] For this reason, Turner's bailment argument lacks merit. STG does not merely "hold" user data like a coat-check service. It must host, process, and maintain copies to operate its platform, which is fundamentally different from a bailment relationship.

proprietary" and granting STG broad rights to use and disclose such information "for any purpose whatsoever." Dkt. 409-1 at 3.

Turner relies on Justice Gorsuch's dissent in *Carpenter v. United States*, 585 U.S. 296 (2018), which suggested that entrusting data to a third party does not necessarily mean that a person loses all Fourth Amendment protections in its contents. *Id.* at 400–01 (Gorsuch, J., dissenting). This argument is unavailing. The majority in *Carpenter* relied on privacy interests, not property rights, to find that the third-party doctrine does not apply to tracking an individual's movements through historical cell-site location data. *Id.* at 311–12.[5]

The First Circuit's decision in *Harper v. Werfel*, 118 F.4th 100 (1st Cir. 2024), *cert. denied sub nom. Harper v. Faulkender*, 145 S. Ct. 2867 (2025), provides instructive guidance. In *Harper*, the IRS sent a "John Doe" subpoena to Coinbase, a cryptocurrency exchange, for records regarding several customers, including Harper. Harper brought a complaint challenging the subpoena arguing, in part, that the subpoena infringed on this privacy and property rights under the Fourth Amendment. The First Circuit held that the account information sought in the subpoena "falls squarely within th[e] 'third party doctrine' line of precedent" and that Coinbase users lack a reasonable expectation of privacy in these documents. *Id.* at 107 (citation omitted). The Court rejected the attack on the third party doctrine in Justice Gorsuch's dissent and relied, instead, on the holding in *Miller*, 425 U.S. at 443, that an individual has no legitimate expectation of privacy in account information kept in bank records.[6] Here, Turner's account

---

[5] Turner also cites to *United States v. Zelaya-Veliz*, 94 F.4th 321 (4th Cir.), *cert. denied*, 145 S. Ct. 571 (2024), which addressed the reasonable expectation of privacy in non-public social media content. This case does not discuss property ownership, and as noted earlier, this Court already found that Turner lacked a reasonable expectation of privacy in the STG records.

[6] Turner argues that unlike Harper, Turner identified legal sources for his property interest, such as the Stored Communications Act. However, the fact that the Stored Communications Act

information and his posts (including deleted posts) are similar to one's bank records in which he has no property interest.

Finally, Turner attempts to establish his electronic information with STG as property based upon the definition of property in the Virginia statutes criminalizing theft of electronic information or data. Indeed, Virginia defines "property" to include computer data in the Virginia code which criminalizes certain computer crimes. *See* Va. Code § 18.2-152.2. The statute does not, however, create a property interest in the electronic data in any particular individual or bestow upon any person a constitutional expectation of privacy in such data or information.

## IV.    Consent

Turner has consented to disclosure of the records by agreeing to STG's Terms of Service. These terms explicitly authorize STG to release account information to law enforcement. Specifically, the STG Terms of Services provide that STG may "access, preserve and disclose your information and content" for various purposes, including complying with legal obligations and protecting the rights or safety of users and the public. Dkt. 409-1 at 4.

Turner relies upon *Byrd v. United States*, 584 U.S. 395 (2018) and *United States v. Washington*, 573 F.3d 279 (6th Cir. 2009), to assert that contractual terms of service cannot establish Fourth Amendment consent. Both cases are inapposite. The cases address whether violation of a rental agreement (automobile or apartment) eliminates any expectation of privacy in the leased property. These cases do not address whether a user of leased property can consent to future disclosures of digital records. In *Byrd*, the court held that permitting an unauthorized driver operate a rental car, standing alone, does not negate the unauthorized user's reasonable

---

requires a warrant to produce certain electronic communications does not establish an ownership interest in those records. This Court has previously rejected an effort to suppress the STG records because of any perceived Stored Communications Act violations. *See* Dkt. 388 at 10–12.

expectation of privacy in the vehicle. 584 U.S. at 407–08. In *Washington*, the court found that the violation of an apartment lease agreement, without more, does not violate otherwise reasonable expectations of privacy to the premises. 573 F.3d at 284. Neither case involved user-generated digital content or the voluntary acceptance of terms governing its disclosure.

In contrast, courts have upheld similar terms of service as valid consent in cases involving electronic data. In *United States v. Bode*, No. CRIM. ELH-12-158, 2013 WL 4501303 (D. Md. Aug. 21, 2013), the government began investigating users of Free6.com, a website that hosted adult pornography and sexual content, when it became suspicious that some users were exchanging child pornography through the website's chat service. During the investigation, Free6.com's administrator gave a law enforcement agent administrative access privileges to the website, leading to the discovery of alleged images of child pornography transmitted by Bode. Bode sought to suppress all the government's evidence on the ground that it was derived from Free6.com chat messages and the agent's review of those messages violated the Fourth Amendment. The court found that Bode's acceptance of terms in a warning banner constituted consent to the search. *Id.* at *20. The banner stated: "All posted pictures and conversations, public and private, are logged and supervised. Free6 may disclose those communications to the authorities at its discretion." *Id.* Similarly, STG's Terms of Service required users to "acknowledge, consent and agree" that STG may "disclose your account information and Content" to comply with legal requirements. Dkt. 409-1 at 4. Turner's acceptance of the terms was sufficient to constitute consent to any search that may have occurred. *See also United States v. Colbert*, No. 23-CR-40019-TC-1, 2024 WL 2091995, at *8 (D. Kan. May 9, 2024) (finding that the defendant's consent that a social media company could access his files at any time undermined his trespass theory).

10

The Terms of Service here operate as valid consent because they clearly notify users that their information may be disclosed to law enforcement under specified circumstances. Turner voluntarily agreed to these terms as a condition of using STG's services.[7] His argument that users do not read terms of service does not invalidate his consent under established Fourth Amendment principles.

## **CONCLUSION**

For the foregoing reasons, Defendant's Supplemental Motion to Suppress Unlawful Search of SkiptheGames Account (Dkt. 408) is **DENIED**.

It is so **ORDERED.**

Entered:  October 30, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[7] The government relies on Terms of Service from December 2023, one year after Turner appears to have created his STG account. However, STG representative Hanka confirmed that no substantive changes were made to the user agreement "in the last few years." Dkt. 409-2 at 1. This testimony provides sufficient basis to conclude that materially similar terms governed Turner's account during the relevant period.